**UNITED STATES of America,**
**Appellee,**

v.

**Frank MAZZOCHI, Jr., Appellant.**

**No. 597, Docket 34284.**

United States Court of Appeals,
Second Circuit.

Argued March 11, 1970.

Decided April 7, 1970.

Irving Anolik, New York City, for appellant.

Jerome C. Ditore, Asst. U. S. Atty. (Edward R. Neaher, U. S. Atty., for Eastern District of New York, on the brief), for appellee.

Before SMITH, KAUFMAN and HAYS, Circuit Judges.

J. JOSEPH SMITH, Circuit Judge:

Frank Mazzochi, Jr. appeals his conviction on trial to the jury in the Eastern District of New York, John F. Dooling, Jr., Judge, for violating 18 U.S.C. §§ 1708 and 2 in that he was in possession of certain stock certificates which he knew had been stolen from the mail. Appellant raises two issues, namely whether the trial court erred in denying, after a hearing, his motion to suppress evidence obtained from a search and seizure of a Buick automobile which appellant had rented and whether it was error to admit into evidence certain American Express travelers' checks found in the search. We find no error and affirm the judgment.

In the investigation of a robbery of travelers' checks (total worth $620,000) from a pier on the North River, New York police and Waterfront Commission representatives arranged through undercover agents to purchase from one Candarini, a co-defendant, a certain amount of the stolen checks for $13,500. On October 24, 1967, three undercover agents met Candarini, by pre-arrangement at 1 p. m. at the Korvette Shopping Center parking lot in Brooklyn to make the purchase. When asked if he was going to get the checks, Candarini told the agents to come with him; the four went to a white Dodge, and Candarini pointed to a shopping bag in the car. However, this turned out to be the wrong car and Candarini said he would go get the checks. One of the agents and Candarini went to a gold 1965 Buick, License No. 4D 4076 N.Y. which was leased to Mazzochi; Candarini opened the trunk with a key and took out a white shopping bag. The two returned to the car of one of the other agents and Candarini put the bag in the trunk; an agent asked if the stuff was there, looked into the bag and saw travelers' checks. Candarini was paid and started to walk toward his white Dodge; however, he was arrested by Detective Massaro who also told another officer to keep the gold Buick "secured" and under surveillance. Massaro looked into the Buick but found nothing; he could not look in the trunk because it was locked and no key was then found on Candarini. At 2:30 p. m. some of the Waterfront Commission men attempted to force open the Buick's trunk but were told to leave it alone. At 5 p. m. another police officer arrived to search the Buick, and he opened and searched the trunk. At this time among other things was found a black attache case (Mazzochi's) containing various documents, including appellant's passport (with his photograph) and the stolen stock certificates which resulted in the instant indictment and conviction. The Buick was later moved to a state District Attorney's office. The sufficiency of the evidence, assuming proper search and seizure of the car, is not contested by Mazzochi. The search and seizure are contested. Mazzochi was shown to have leased the Buick from April 26, 1967 until it was seized by the police. The Buick was about 150 feet from the spot where Candarini was arrested, and was not searched until 3½ to 4 hours after his arrest. It was only in the delayed search that the black attache case containing three stock certificates stolen from the U. S. mails was found; Mazzochi stipulated at trial that the attache case and the documents therein, except the stolen stock certificates, were his.

The principal contention in this appeal is that the search and seizure of the trunk's contents was not incidental to the arrest of Candarini, the co-defendant, and therefore the evidence (stolen stock certificates) was unconstitutionally obtained. Since Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969) is not to be applied to this search in October, 1967, United States v. Bennett, 415 F.2d 1113 (2d Cir. 1969), the question of whether the search and seizure was valid depends on pre-*Chimel* principles. In Harris v. United States, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399 (1947), the Court held that search and seizure incident to a lawful arrest is valid without a search warrant and may, under appropriate circumstances extend beyond the person of the one arrested to include the premises under his immediate control. In United States v. Rabinowitz, 339 U.S. 56, 70 S. Ct. 430, 94 L.Ed. 653 (1950), also pre-*Chimel*, the Court noted that there was no fixed formula for the reasonableness test to be applied and that validity of searches incident to lawful arrest turns upon reasonableness under the circumstances and not upon the practicability of procuring a search warrant since such warrant is not required. The Court considered car searches in Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L. Ed.2d 777 (1964) and Cooper v. California, 386 U.S. 58, 87 S.Ct. 788, 17 L. Ed.2d 730 (1967). In *Preston*, although acknowledging that police have the right to search and seizure contemporaneously with arrest (and this extends to things under the accused's immediate control), justification for such a warrantless search was held absent where the search was remote in time or place from the arrest. The Court stated that once an accused was under arrest and in custody, a search made at another place, without warrant, is simply not incident to arrest and the fact that the police may have had a right to search the car when they first came on the scene (because the arrest was valid or they had probable cause to think the car stolen—defendant was charged with vagrancy), that does not decide the question of the reasonableness of the search at a later time and at another place.

Although *Preston* placed some limitation on car searches following arrest, *Cooper* supports the district court's ruling here. The Court in *Cooper*, perhaps not very convincingly, distinguished *Preston* and said that much of *Preston's* rationale was based on the fact that the defendant there was arrested for vagrancy, and the car being towed was apparently only for Preston's convenience; in such a case the Court stated that the fact that police had custody of Preston's car was totally unrelated to the vagrancy charge for which they arrested him and their subsequent search was also totally unrelated thereto. In *Cooper*, the search of a car one week after arrest was upheld since under California law the officers properly seized the car because of the crime for which they had arrested the defendant (narcotics) which made the car forfeitable under state law; the subsequent search of the car was closely related to the reason defendant was arrested, the reason his car was impounded and the reason it was being retained. The Court found it no answer to say that the police could have obtained a search warrant since the relevant test is not whether it is reasonable to procure a search warrant but whether the search was unreasonable. The situation here seems closer to *Cooper* than to *Preston*. Candarini was seen removing the white bag containing stolen travelers' checks from the Buick's trunk, and Detective Massaro helped arrest Candarini and caused the car to be "secured" and kept under surveillance. The subsequent retention of and search of the car (since the great bulk of the stolen travelers' checks were still to be found) the same afternoon and before the car was moved was reasonable and related to the purpose for which Candarini was arrested. *Cooper* therefore supports the finding that the search was reasonable as to Candarini; since the search is reasonable as to Candarini, Mazzochi's claim

must fail. Since the seizure was lawful against Candarini, Mazzochi was not entitled to suppression (even though the police obtained a windfall—evidence of an unrelated crime) and the search was properly upheld.

■■■ The other issue raised by Mazzochi is that by reason of the judge's failure to sever the trial of the defendants, coupled with the introduction of the evidence of the stolen travelers' checks, after which the charge in this trial was dismissed as to Candarini, the appellant could not receive a fair trial; Mazzochi argues that the limiting charge was too confusing to help. It is within the sound discretion of the trial judge whether defendants should be tried together or severally. Opper v. United States, 348 U.S. 84, 75 S.Ct. 158, 99 L.Ed. 101 (1954). The motion was made prior to trial in this case; both defendants were charged in a one-count indictment with the unlawful possession of stolen stock certificates, knowing them to have been stolen from the U.S. mails. Since both defendants were being charged due to possession in and by relation to the Buick (Candarini because he opened the trunk with a key and took the white bag out of it and Mazzochi because he had leased the car and was in constructive possession of the trunk, as further evidenced by his black attache case therein), severance was properly denied prior to trial. After the court dismissed the charge as to Candarini, appellant moved to strike from the record all evidence concerning the American Express travelers' checks; although the court denied the motion, it gave a limiting instruction as to the purpose for which the jury could consider the travelers' checks to the effect that if the jury found them (1) to be stolen property and (2) to have been in the trunk, they could be considered on the question of whether or not Mazzochi knew the stock certificates were stolen. The court admonished the jury that that was the only relevancy and that there was no charge of any kind regarding the checks. The fact that there were other stolen goods in the same trunk, constructively possessed by the appellant, as the black attache case containing the stolen stock certificates, was relevant on the question of his knowledge that the stock certificates were stolen. See United States v. Byrd, 352 F.2d 570, 574 (2d Cir. 1965). Cf. United States v. De-Sisto, 329 F.2d 929, 935 (2d Cir.), cert. denied, 377 U.S. 979, 84 S.Ct. 1885, 12 L.Ed.2d 747 (1964); United States v. Stadter, 336 F.2d 326 (2d Cir.), cert. denied, 380 U.S. 945, 85 S.Ct. 1028, 13 L. Ed.2d 964 (1965).

The judgment is affirmed.