**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Robert Joseph MOLKENBUR, Defendant-Appellant.**

No. 19854.

United States Court of Appeals,
Eighth Circuit.

Aug. 14, 1970.

John L. Boeger, St. Louis, Mo., for appellant; Morris A. Shenker, St. Louis, Mo., on the brief.

John A. Newton, Asst. U. S. Atty., St. Louis, Mo., for appellee; Daniel Bartlett, Jr., U. S. Atty., on the brief.

Before BLACKMUN,* MEHAFFY and BRIGHT, Circuit Judges.

BRIGHT, Circuit Judge.

Robert Molkenbur and Ernest Toler were indicted for unlawful possession of merchandise valued at more than $100.-00 stolen from an interstate shipment in violation of 18 U.S.C. § 659. The jury convicted both defendants, and only Molkenbur appeals.

He contends that the trial court erred in permitting the prosecution to introduce, over objection, a carton containing one-hundred-forty-two packaged men's sport shirts and packing slips. Appellant contends the police seized these items without a warrant in violation of his Fourth Amendment rights. The trial court, Chief Judge Harper, denied this contention, rejected defendant's motions to suppress the evidence at a pretrial hearing and permitted the prosecution to introduce these exhibits at trial.

* Blackmun, Circuit Judge, took no part in the disposition of this case.

We sustain the trial court's ruling and affirm the conviction.

We review the pertinent facts. Defendant Molkenbur, as a truck driver for Hennis Truck Lines in St. Louis, Missouri, operated a large tractor-trailer unit. He delivered interline freight to various local truck terminals prior to its trans-shipment outside of St. Louis. On April 1, 1969, Molkenbur drove his truck unit to a residential address in St. Louis owned by him but occupied by his nephew, co-defendant Ernest Toler, and the latter's family. A Mrs. Berghofer, visiting in her daughter's home located across the street from the Toler dwelling, reported to police a few days later that she saw Molkenbur remove three cartons from his truck and hand them over the front yard fence to Toler. The St. Louis police investigated. On April 12, police officer Herman Ubben of the freight and junk squad observed a Hennis Truck Lines tractor-trailer unit stop in the street adjacent to Toler's residence. Ubben called the Hennis Truck Lines office and learned that the driver's stop on this occasion, as well as the one reported earlier, were unauthorized.

Molkenbur's arrest occurred on April 16. On that date, Mrs. Berghofer and her two daughters, while visiting in the premises across the street from the Toler home, saw Molkenbur again drive the Hennis Truck Lines tractor-trailer unit to the front of the Toler residence. One daughter who knew Officer Ubben telephoned him at police headquarters to report the stop. While she was speaking to Ubben, the other ladies reported seeing the driver take a large package from the truck and hand it over the fence to Toler, who dragged it to the rear of the house. The caller relayed this additional information to Ubben, who, in turn, transmitted this report for broadcast by police radio. A few moments later, a police car containing Sergeant Llewelyn and Corporal Judge drove to the front of the Toler residence. The officers observed Molkenbur standing near his truck. They arrested him on suspicion of theft, advising the defendant that he had been seen removing merchandise from his truck. Molkenbur explained that he had removed a power lawn mower from the truck and delivered it to his nephew Toler with the permission of his company. He invited the officers to examine the mower in Toler's yard and to verify his authority by calling his company dispatcher. The two police officers inspected a lawn mower in Toler's yard and accompanied Molkenbur into the kitchen, where he telephoned his employer. In the meantime, Officer Ubben and his partner, William Tipolt, arrived at the Toler address in another squad car which they drove into the public alleyway at the rear of the Toler residence. From there, these officers observed a large, partly-torn-open cardboard carton located near the rear of Toler's yard, just inside a three-and-one-half or four foot chain-link fence. The carton lay between the fence and a hedge row located in back of the house. The hedge partially obstructed the view from the house toward the back yard. Ubben saw Sergeant Llewelyn near the rear of Toler's house and called to him, directing his attention toward the merchandise in the cardboard box. Llewelyn then walked toward the fence and saw these items. Thereafter, Ubben and Tipolt entered the yard and arrested Toler for suspected theft. After the arrest, Tipolt retrieved the box and its contents and delivered these items to police headquarters. Later, the police, while examining the box and its contents without a warrant, discovered shipping documents in the bottom of the carton which identified the manufacturer and its order number. At the trial, a representative of the manufacturer was able, through the shipping documents, to identify the merchandise as moving in interstate commerce on the day of the arrest.

On this appeal, Molkenbur contends the officers had no probable cause to arrest him and, thus, the search and seizure of the merchandise without a warrant violated his Fourth Amendment rights. He contends, further, that his

arrest on the street, if a valid one, will not justify a search in Toler's yard. Finally, Molkenbur urges that the warrantless search of the cardboard carton at the police station, leading to the discovery of packing slips, further violated his constitutional rights. The government urges, in response, that police possessed probable cause to arrest Molkenbur, that as a proper incident of that arrest the police searched and seized the container of merchandise, or, alternatively, that the search and seizure occurred as an incident to the defendant Toler's arrest. In reply, appellant denied appellee's right to assert for the first time on appeal the alternate theory of a seizure incident to Toler's arrest. This latter contention lacks any support in the record since the trial court considered the validity of the seizure in connection with the arrest of each defendant.

■ Judge Harper, in a combined hearing on similar motions of both defendants to suppress the carton and its contents as evidence, commented that the officers discovered the evidence without a search. We agree with this observation. This case falls outside the "search" provision of the Fourth Amendment. Police officers who see objects in plain view discover them without any search. In Harris v. United States, 390 U.S. 234, 88 S.Ct. 992, 19 L. Ed.2d 1067 (1968),[1] the Supreme Court said:

> It has long been settled that objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence. (Citations omitted.) 390 U.S. at 236, 88 S.Ct. at 993.

■ Seizures without searches, as well as seizures with searches, fall within the proscription of the Fourth Amendment assuring "the right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures. * * * *" In this case, the police seized the merchandise in question within the curtilage, which is entitled to the same protection as the home against search and seizure. United States v. Taylor, 428 F.2d 515 (8th Cir., June 8, 1970). Courts apply stricter standards in determining the validity of a search and seizure in a home as compared to an automobile. See United States v. Davis, 423 F.2d 974, 977 (5th Cir. 1970); compare Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (June 22, 1970), with Vale v. Louisiana, 399 U.S. 30, 90 S.Ct. 1969, 26 L.Ed.2d 409 (June 22, 1970), and Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). To seize articles in plain view, police officers must rightfully be in a position to have that view without the opportunity, as a practical matter, of obtaining a search warrant before making the seizure. See Harris, supra, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (seizure from defendant's automobile); Ker v. California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963) (seizure from defendant's home). However, the fact that officers obtain their view of items valuable as evidence through an unlawful entry into the defendant's dwelling house or upon defendant's real property (e. g., Stoner v. California, 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964); Chapman v. United States, 365 U.S. 610, 81 S.Ct. 776, 5 L.Ed.2d 828 (1961); Jeffers v. United States, 342 U.S. 48, 72 S. Ct. 93, 96 L.Ed. 59 (1951); Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948)) or fail to obtain a warrant under circumstances where they earlier discover, or reasonably suspect the existence of the incriminatory evidence for a substantial period of time (e. g., McDonald v. United States, 335 U.S. 451, 69 S.Ct. 191, 93 L.Ed. 153 (1948); Trupiano v. United States, 334 U.S. 699, 68 S.Ct. 1229, 92 L.Ed. 1663

---

1. Not to be confused with Harris v. United States, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399 (1947), also a search and seizure case, overruled by Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969).

1948); Taylor v. United States, 286 U. S. 1, 52 S.Ct. 466, 76 L.Ed. 951 (1932)) renders the seizure invalid and bars the use of the questioned items as evidence.

We believe the holding in *Ker, supra,* 374 U.S. 23, 83 S.Ct. 1623, is dispositive of this case. There, officers, after making a "no knock" entrance into a dwelling house to arrest a suspect as authorized by California law, discovered a brick of marijuana laying in plain view and another person, the suspect's wife, within the dwelling house. This discovery furnished the law enforcement officers with additional information sufficient to justify the arrest of the suspect's wife based on probable cause to suspect her of participation in the commission of a felony. The court held that such warrantless seizure of the marijuana as an incident of that arrest did not exceed constitutional bounds.

■ The facts in the instant case justifying Toler's arrest and the seizure of the stolen merchandise are stronger than in *Ker, supra,* 374 U.S. 23, 83 S.Ct. 1623. Ubben and Tipolt discovered the men's clothing bearing the manufacturer's label in plain view without first entering the premises. This discovery, together with the information that these officers had received via the police radio, furnished an appropriate basis for Toler's arrest as a person participating in the commission of a felony, that of possessing stolen property valued at more than $50.00.[2] Missouri statutes authorize an officer to break into "a dwelling house * * * or any other enclosure" to make an arrest in criminal actions.[3] Ubben, thus, acted in a manner authorized by Missouri law.[4]

Appellant Molkenbur incorrectly characterizes the circumstances in this case as a search and seizure incident to his own arrest. Sergeant Llewelyn, who arrested Molkenbur, neither seized nor directed the seizure of the stolen merchandise. Appellant raises no serious question concerning the validity of Toler's arrest. The evidence found and lawfully seized as an incident of Toler's arrest was properly admitted against Molkenbur. The fact that the articles discovered as an incident of this arrest incriminated Molkenbur, as well as Toler, does not violate Molkenbur's Fourth Amendment rights, even though this discovery works to his misfortune. United States ex rel. Spero v. McKendrick, 409 F.2d 181 (2d Cir. 1969); United States v. Cole, 365 F.2d 57 (7th Cir. 1966), cert. denied, Passini v. United States, 385 U. S. 1027, 87 S.Ct. 741, 17 L.Ed.2d 674 (1967); see Frazier v. Cupp, 394 U.S. 731, 740, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969). Thus, we find it unnecessary to consider the validity of Molkenbur's arrest as a basis to support the admissibility of the questioned evidence.

■ The facts here are closely akin to *Taylor, supra,* 428 F.2d 515, in which we sustained the right of police officers not armed with a warrant to enter a private driveway of a home, arrest an occupant of a motor vehicle parked in that driveway and seize stolen merchandise in plain view. A police officer seeing a suspect engaged in the commission of a felony and in possession of apparently stolen merchandise may proceed with an arrest and a seizure incident to that arrest since the evidence "could be destroyed if not seized immediately." *Taylor, supra,* 428 F.2d p. 519. Cf. Marron v. United States, 275 U.S. 192, 48 S.Ct. 74, 72 L.Ed. 231 (1927). In this case, too, unless the officers immediately seized the articles of men's wear,

---

2. Vernon's Ann.Mo.Stat. §§ 560.161, 560.-270 (Supp.1969).

3. Vernon's Ann.Mo.Stat. § 544.200 (1953); see State v. Novak, 428 S.W.2d 585 (Mo. 1968).

4. State law determines the validity of an arrest, unless violative of the Constitution. Miller v. United States, 357 U.S. 301, 305, 78 S.Ct. 1190, 2 L.Ed.2d 1332 (1958); United States v. Di Re, 332 U.S. 581, 589, 68 S.Ct. 222, 92 L.Ed. 210 (1948); Klingler v. United States, 409 F.2d 299, 302 (8th Cir.), cert. denied, 396 U.S. 859, 90 S.Ct. 127, 24 L.Ed.2d 110 (1969); Theriault v. United States, 401 F.2d 79, 81 (8th Cir. 1968), cert. denied, 393 U.S. 1100, 89 S.Ct. 898, 21 L.Ed.2d 792 (1969).

which were located on private property, they possessed no effective means of preventing their removal or destruction. Officer Tipolt acted reasonably in immediately preserving the evidence.

Appellant relies on Niro v. United States, 388 F.2d 535 (1st Cir. 1968), for reversal. As we noted in *Taylor, supra*, 428 F.2d 515, *Niro* may be distinguished, since police authorities had knowledge of defendant's possession of stolen goods approximately twelve hours prior to the warrantless seizure, but, despite that knowledge, neglected to obtain a search warrant. Here, as in *Ker, supra*, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed. 2d 726, the fortuitous discovery by police of incriminating evidence, which, added to other information possessed by them, contemporaneously produced probable cause to arrest a defendant, his actual arrest and incidental seizure of the items introduced as evidence.

Appellant's further claim that the police officers needed a warrant to examine and inventory the cardboard container and its contents lacks merit. Having properly seized the apparently stolen merchandise, the police are authorized to thoroughly examine the objects of the seizure later at police headquarters without a warrant. See *Chambers, supra*, 399 U.S. 42, 90 S.Ct. 1975, 26 L. Ed.2d 419; Cooper v. California, 386 U. S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967).

Affirmed.